UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KIM NAIMOLI,

                    Plaintiff,

        v.

OCWEN LOAN SERVING, LLC,

                  Defendant.

**DECISION AND ORDER**

6:18-CV-06180 EAW

---

## <u>INTRODUCTION</u>

Plaintiff Kim Naimoli ("Plaintiff") brings this action against defendant Ocwen Loan Servicing, LLC ("Ocwen" or "Defendant"), alleging violations of the Real Estate Settlement Procedure Act's ("RESPA"), 12 U.S.C. §§ 2601-2617, implementing regulations, New York General Business Law ("GBL") § 349, and Title 3 of New York Codes, Rules, and Regulations ("NYCRR") § 419.3. (*See* Dkt. 1).

Presently before the Court is Defendant's motion for summary judgment. (Dkt. 46). For the reasons that follow, the Court grants Defendant's motion as to Plaintiff's federal claims, and declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

## BACKGROUND

### I.   Factual Background

#### A.   History of Plaintiff's Mortgage Loan Prior to Ocwen's Servicing

The following facts are taken from Defendant's Statement of Undisputed Material Facts (Dkt. 47), Plaintiff's response to Defendant's statement (Dkt. 55), Plaintiff's Statement of Additional Material Facts (*id.*), and the evidence submitted by the parties in support thereof.  Unless otherwise noted, these facts are undisputed.  As is required at this stage of the proceedings, the Court construes all evidence in the light most favorable to Plaintiff.

The mortgage loan at issue was executed by Plaintiff on or about June 25, 2008, in favor of IndyMac Bank, F.S.B. ("IndyMac"), and was subject to a Consolidation, Extension and Modification Agreement (the "CEMA").  (Dkt. 47 at ¶ 1; Dkt. 55 at ¶ 1).  The CEMA consolidated the following two existing loans and related mortgages that encumbered property located at 827 South Main Street, Geneva, New York:

a.    that certain Mortgage, dated as of July 23, 2002 (the "2002 Mortgage"), executed by Plaintiff in favor of Coral Mortgage Inc. that secured payment of a note in the amount of $253,500.00; and

b.    that certain Mortgage, dated as of June 25, 2008 (the "Gap Mortgage"), executed by Plaintiff in favor of IndyMac that secured payment of a note in the amount of $2,875.49.

(*Id.*).  On July 29, 2002, the 2002 Mortgage was recorded in the Office of the Ontario County Clerk.  (*Id.*).

On or about June 25, 2008, to fund the CEMA, Plaintiff executed a Mortgage in favor of IndyMac (the "2008 Mortgage").  (Dkt. 47 at ¶ 2; Dkt. 55 at ¶ 2).  The 2008

Mortgage secured payment of a consolidated note in the amount of $227,100.00 (the "Consolidated Note," and together with the CEMA and the 2008 Mortgage, the "Mortgage Loan"). *Id.* Prior to the transfer of servicing of the Mortgage Loan to Defendant, the Gap Mortgage, the CEMA, and the 2008 Mortgage were never properly recorded in the Office of the Ontario County Clerk at the time of their execution. (*Id.*).

**B.    History of Plaintiff's Mortgage Loan Subsequent to Transfer of Servicing to Ocwen**

On or about September 1, 2013, IndyMac Mortgage Services, a division of OneWest Bank, F.S.B., transferred the servicing of the Mortgage Loan to Ocwen. (Dkt. 47 at ¶ 3; Dkt. 55 at ¶ 3). Because Plaintiff was delinquent with her payments under the Mortgage Loan, Defendant sent monthly notices requesting Plaintiff bring her payments current. (Dkt. 47 at ¶ 4; Dkt. 55 at ¶ 4). During this period, Plaintiff requested a modification of the Mortgage Loan under the Home Affordable Modification Program ("HAMP"). (*Id.*). On or about August 11, 2015, Defendant notified Plaintiff that there were issues with her mortgage title that prevented acceptance into HAMP. (*Id.*).

On or about August 25, 2015, Plaintiff appealed the denial of her modification. (Dkt. 47 at ¶ 5; Dkt. 55 at ¶ 5). On or about September 1, 2015, Defendant denied Plaintiff's appeal, stating:

> IndyMac processed [the CEMA] in 2008 in the amount of $227,100.00, but it appears the Consolidated Mortgage and CEMA were never recorded at the county. We require the recorded consolidation copy in the amount of $227,100.00. Ocwen has been actively working on the proper recording of the consolidation; however, the approval of the permanent HAMP modification cannot be granted due to the issue with the mortgage title.

(*Id.*).

On or about December 3, 2015, Defendant sent an email with instructions and unexecuted copies of the Gap Mortgage and the Mortgage Loan documents (the CEMA, 2008 Mortgage, and Consolidated Note) to Plaintiff for her execution (the "Requested Instruments"). (Dkt. 47 at ¶ 6; Dkt. 55 at ¶ 6). Although the parties previously disputed whether Plaintiff returned all of the Requested Instruments, (*see* Dkt. 47 at ¶ 7 (Defendant states that Plaintiff only returned the newly executed Gap Mortgage and CEMA, but did not return the 2008 Mortgage and Consolidated Note); Dkt. 55 at ¶ 7 (Plaintiff states that she "returned everything required to Ocwen, including the Gap Mortgage, CEMA, 2008 Mortgage, and Consolidated Note")), the parties now appear to agree that Plaintiff returned executed copies of the Requested Instruments.[1]

On or about August 26, 2016, Defendant sent Plaintiff a letter offering her a three-month Trial Modification Plan (the "TMP"). (Dkt. 47 at ¶ 8; Dkt. 55 at ¶ 8). Pursuant to the TMP, Plaintiff was requested to make three payments of $2,818.40 to become eligible for final approval of a modification of the Mortgage Loan. (*Id.*). Plaintiff made payments towards the TMP on or about September 27, 2016, October 24, 2016, and October 27, 2016. (Dkt. 47 at ¶ 11; Dkt. 55 at ¶ 11).

On or about October 31, 2016, Defendant sent Plaintiff a letter stating:

[W]e identified issue(s) during the title search that may prevent us from being able to modify [the] loan. We need you to contact us right away to discuss

---

[1]    In a letter dated July 31, 2019, Defendant's counsel withdrew its argument that Plaintiff had never provided executed copies of the Requested Instruments. (*See* Dkt. 59 ("As pointed out to us by counsel for Plaintiff, there is a factual inaccuracy in Argument Section I.C on page 5. Accordingly, Ocwen respectfully requests to withdraw Argument Section I.C ('The Plaintiff Never Provided the Executed Requested Instruments to Ocwen') in its entirety. . . .")).

the issue identified with your loan title.   We CANNOT finalize the modification until the title issues are resolved.

(*Id.* (emphasis omitted)).   Defendant provided Plaintiff forty-five days to resolve the title

issues.   (*Id.*).

On or about November 10, 2016, Defendant reached out to Plaintiff, and stated:

Please see the below title issue: . . . No Recorded Record of Mortgage for $227,100.00 from IndyMAc [sic] Bank, FSB. No recorded record of the Consolidation Extension and Modification Agreement dated 2008.   The Borrower can forward any documents they have to clear this issue to WPB_5416_ContractCompliance@ocwen.com or fax to 404-737-5416.

(Dkt. 47 at ¶ 12; Dkt. 55 at ¶ 12).   On or about November 11, 2016, Defendant provided

further explanation to Plaintiff, stating:

The issue is that the CEMA and Consolidated Mortgage have never been recorded.   Ocwen needs the recorded CEMA and Consolidated Mortgage to clear the title issue on this account.   Please have the CEMA and Consolidated Mortgage recorded and provide a copy . . . to forward to Ocwen.

(Dkt. 47 at ¶ 13; Dkt. 55 at ¶ 13).   On or about December 21, 2016, believing it had not

received the documents necessary for the loan modification, Defendant sent Plaintiff a

letter notifying her that she was no longer eligible for the loan modification due to an issue

with her mortgage title.   (Dkt. 47 at ¶ 14; Dkt. 55 at ¶ 14).

On or about January 3, 2017, Plaintiff appealed the denial of the loan modification

on the basis that Defendant had the original documents that needed to be recorded but that

Defendant refused to pay the recording fees.   (Dkt. 47 at ¶ 15; Dkt. 55 at ¶ 15).   On January

26, 2017, Defendant denied Plaintiff's appeal and stated:

We confirmed the Mortgage for $227,100.00 from IndyMac Bank, FSB, and the Consolidation Extension and Modification Agreement dated 2008 completed with the prior servicer have not been recorded in the county

records; therefore, the most recently approved Proprietary Modification Program cannot be finalized.

(Dkt. 47 at ¶ 16; Dkt. 55 at ¶ 16).

### C. Plaintiff's Requests for Information

On or about August 25, 2017, Defendant received the following two letters from Plaintiff's counsel:

a.   a letter regarding "Request for Information Pursuant to 12 C.F.R. § 1024.36 and 15 U.S.C. § 1641(f)(2)" ("RFI #1"); and

b.   a letter regarding "Request for Information Pursuant to 12 C.F.R. § 1024.36" ("RFI #2," and together with RFI #1, the "RFIs").

(Dkt. 47 at ¶ 18; Dkt. 55 at ¶ 18).  RFI #1 requested the identities and addresses for the Mortgage Loan's current owner, master servicer, and current servicer.  (Dkt. 47 at ¶ 19; Dkt. 55 at ¶ 19).  RFI #2 requested, among other things, "various information concerning the Mortgage Loan, including transactional history, servicing history, the collateral file, escrow account information, and any loss mitigation activity."  (Dkt. 47 at ¶ 20).

The parties dispute whether Defendant sent Plaintiff a letter acknowledging receipt of the RFIs on or about August 30, 2017.  (Dkt. 47 at ¶ 21 (Defendant states that it sent the letter); Dkt. 55 at ¶ 21 (Plaintiff asserts that "Ocwen has a habit of putting documents into its system and not sending them to borrowers," but agrees that "Ocwen generated the . . . letter [that] was addressed to an address that is not [Plaintiff's] home or the address listed on the third-party authorization")).  Defendant responded to the RFIs in its September 26 and 27, 2017, letters.  (Dkt. 47 at ¶¶ 22, 23; Dkt. 55 at ¶¶ 22, 23).

### D.    Plaintiff's Notice of Error

On or about December 14, 2017, Plaintiff sent Defendant a letter asserting a notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) (the "NOE").  (Dkt. 47 at ¶ 24; Dkt. 55 at ¶ 24).  The NOE, in part, stated that "[Plaintiff] hereby alleges that Statebridge [sic] has committed no less than one (1) error in the servicing of [Plaintiff's] mortgage loan account."  (*Id.*).  On or about December 18, 2017, Defendant sent a letter to Plaintiff acknowledging receipt of the NOE.  (Dkt. 47 at ¶ 25; Dkt. 55 at ¶ 25).  On or about January 16, 2018, Ocwen sent a response to the NOE.  (Dkt. 47 at ¶ 26; Dkt. 55 at ¶ 26).

## II.    Procedural Background

Plaintiff commenced this action on March 1, 2018.  (Dkt. 1).  Plaintiff alleges the following claims: (1) a violation of 12 C.F.R. § 1024.35(e)(1)[2] for failure to properly respond to a notice of error; (2) violations of 12 C.F.R. § 1024.36(c), (d) for failure to timely acknowledge the RFIs and timely respond to RFI #1; (3) a violation of GBL § 349; and (4) a violation of 3 NYCRR § 419.3 due to Defendant's failure to conduct business in accordance with RESPA and New York State Consumer Protection Statutes.  (*See id.*).  Defendant answered on March 28, 2018.  (Dkt. 7).

Discovery closed on February 25, 2019.  (*See* Dkt. 29).  Defendant filed the instant motion for summary judgment on May 24, 2019.  (Dkt. 46).  Plaintiff filed her response on

---

[2]      In her opposition to Defendant's motion for summary judgment, Plaintiff withdrew "any claim based on 12 C.F.R. § 1024.35(e)(3) because her counsel received [Defendant's] [r]esponse to the NOE on January 16, 2018" and thus conceded Defendant's response to the NOE was timely.  (Dkt. 56 at 9 n.1).  Accordingly, the Court only addresses Plaintiff's § 1024.35(e)(1) claim.

July 8, 2019.  (Dkt. 54; Dkt. 55; Dkt. 56).  Defendant filed its reply on July 29, 2019.  (Dkt. 58).

## **DISCUSSION**

## I.   **Legal Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could find in favor of that party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact[.]"  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014).  "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial."  *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation."  *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d

Cir. 2011)).   Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358.   Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## II.   Real Estate Settlement Procedures Act ("RESPA") Claims

The Court first considers whether Defendant is entitled to summary judgment on Plaintiff's claims for alleged violations of RESPA's implementing regulations, § 12 C.F.R. §§ 1024.1-1024.41, which are collectively known as "Regulation X."   *See Tanasi v. CitiMortgage, Inc.*, 257 F. Supp. 3d 232, 251 (D. Conn. 2017).   RESPA was enacted "to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country."   12 U.S.C. § 2601(a).   "The statute applies to 'federally related mortgage loan[s],' a term that includes loans secured by a lien on residential real estate 'designated principally for the occupancy of from one to four families,' for which the lender is federally regulated or has deposits or accounts insured by the federal government." *Sutton v. CitiMortgage, Inc.*, 228 F. Supp. 3d 254, 260 (S.D.N.Y. 2017) (quoting 12 U.S.C. § 2602(1)(A), (B)).

"In 2010, RESPA was amended pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act to address the duties of servicers of federally related

mortgage loans regarding borrower requests for information or assertions of error." *Galli v. Astoria Bank*, No. 16-CV-3549 (SIL), 2017 WL 4325824, at *4 (E.D.N.Y. Sept. 27, 2017) (citation omitted). "The Act also created the [Consumer Financial Protection Bureau (the 'CFPB')], which is charged with creating rules, regulations, and interpretations necessary to achieve RESPA's purpose." *Id.* (citing 12 U.S.C. § 2617(a)). "The CFPB implemented a series of mortgage servicing rules, effective January 10, 2014, with various loss mitigation procedures that servicers must follow after a payment default." *Id.* (citing 12 C.F.R. § 1024).

### A.      Section 1024.35(e)(1) Claim

Plaintiff alleges that Defendant violated 12 C.F.R. § 1024.35(e) by failing to properly respond to her NOE.  (Dkt. 1 at 8-11).  "Section 1024.35 of Regulation X 'allows borrowers to notify mortgage servicers of possible account errors.'"  *Tanasi*, 257 F. Supp. 3d at 266 (quoting 12 C.F.R. § 1024.35).  "This section requires servicers to respond to 'any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred.'"  *Id.* (quoting 12 C.F.R. § 1024.35(a)).

"[T]he regulation only applies to the 'covered errors' listed in § 1024.35(b)."  *Id.* (quoting 12 C.F.R. § 1024.35(b)).  Moreover, "[s]ection 1024.35(b) contains a 'catch all provision,' which applies to 'any other error relating to the *servicing* of a borrower's mortgage loan.'"  *Id.* (quoting 12 C.F.R. § 1024.35(b)(11)) (emphasis added).  RESPA defines "servicing" as:

> receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 10 [12 U.S.C. § 2609], and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3).  "Upon receipt of a notice of a covered error, a servicer must investigate the borrower's assertions and provide a response within the specified time, which depends upon the nature of the alleged error."  *Nash v. PNC Bank, N.A.*, No. TDC-16-2910, 2017 WL 142317, at *6 (D. Md. April 20, 2017) (citing 2 C.F.R. § 1024.35(e)).

Here, Defendant argues that Plaintiff's NOE is insufficient under § 1024.35(a) because it refers to Statebridge, an unrelated lender.  (Dkt. 49 at 16).  Pursuant to § 1024.35(a), an NOE must include the borrower's name, "information that enables the servicer to identify the borrower's mortgage loan account," and "the error the borrower believes has occurred."  *Id.* § 1024.35(a).

The Court is not persuaded that the NOE's erroneous reference to Statebridge renders the NOE insufficient.  Apart from that error, the NOE refers to Ocwen several times.  (*See* Dkt. 1-10 at 2 ("Ocwen Loan Servicing, LLC . . . is the current servicer of the above-referenced mortgage loan account. . . .  On or around December 2015, the Borrower was applying for a loan modification with Ocwen.  Ocwen advised the Borrower that there were title issues. . . .  Ocwen then notified the Borrower . . . that the Borrower was approved for a Modification Trial Period Plan (the 'TPP'). . . .  Ocwen notified the Borrower again that the same title issues were preventing the Borrower from being approved for a final loan modification. . . .  [O]n or around January 2017, Ocwen withdrew the TPP offer and denied the Borrower's trial modification offer. . . .")).

- 11 -

It is true that under the "Conclusion and Requested Actions" section, the NOE twice refers to "Statebridge." (Dkt. 1-10 at 3). However, in light of the NOE's consistent prior references to Ocwen, it appears that the NOE's reference to Statebridge was a typographical error. This conclusion is further supported by the substance of the NOE which extensively details communications between Ocwen and Plaintiff concerning title issues preventing Plaintiff from being approved for a final loan modification. The NOE identified Plaintiff's name and mortgage account number, and described in detail errors in connection with the purportedly improper denial of Plaintiff's loan modification. (*See* Dkt. 1-10 at 1-3). As such, the NOE plainly included sufficient "information that enable[d] [Ocwen] to identify [Plaintiff's] mortgage loan account" pursuant to § 1024.35(a).

Even if the NOE was insufficient pursuant to § 1024.35(a), Defendant does not cite, nor could the Court locate, any authority for the broad proposition that an insufficient NOE relieves a servicer's obligations under § 1024.35(b). "[Defendant's] argument is further undermined by the fact that the regulation provides the appropriate course of action where the servicer refutes the alleged error." *Berry v. U.S. Bank Nat'l Ass'n*, No. 14-24877-CIV-KING, 2015 WL 11233192, at *6 (S.D. Fla. Apr. 29, 2015). Indeed, pursuant to § 1024.35(b)(1)(i), a servicer must respond to a notice of error in one of two ways—either by correcting the error or, upon conducting a reasonable investigation, notifying the borrower that the servicer has determined that no error has occurred. *Id.* § 1024.35(b)(1)(i)(A), (B). Accordingly, the erroneous reference to Statebridge in the NOE does not provide a basis for granting summary judgment to Defendant.

- 12 -

The Court next turns to the substance of Plaintiff's § 1024.35(e)(1) claim.  As discussed above, Plaintiff must identify a "covered error" to sustain her § 1024.35(e)(1) claim.  Defendant argues that because Plaintiff is challenging the denial of her loan modification, the error does not relate to the servicing of the loan and, thus, Plaintiff's § 1024.35(e)(1) claim fails because the denial of a loss mitigation option is not a covered error under § 1024.35(b).  (Dkt. 49 at 15-16).  By contrast, Plaintiff asserts that the error at issue is captured by the "catch all provision" under § 1024.35(b)(11) because the servicing of a loan includes loss mitigation obligations.  (Dkt. 56 at 10-11).  The Court finds the reasoning of *Sutton v. CitiMortgage, Inc.*, 228 F. Supp. 3d 254 (S.D.N.Y. 2017) persuasive and concludes that errors in the evaluation of loss mitigation options are not covered errors under § 1024.35(b)'s catch-all provision.

The *Sutton* court concluded that "errors in evaluation of loss mitigation options are not subsumed by [the] catch-all provision."  *Sutton*, 228 F. Supp. 3d at 272.  In reaching this conclusion, the court found instructive the CFPB's decisions to exclude incorrect evaluations of loss mitigation options as a covered error and to include a catch-all provision relating to the servicing of a mortgage loan:

> The Bureau solicited comment regarding whether the list of covered errors should include a catch-all provision.  The Bureau also requested comment as to whether to add additional specific errors to the list of errors under § 1024.35.  In particular, the Bureau solicited comment regarding whether to include as an error a servicer's failure to correctly evaluate a borrower for a loss mitigation option.
>
> [summarizing comments received]
>
> As noted in the proposal, the Bureau believes that the appeals process set forth in § 1024.41(h) provides an effective procedural means for borrowers

- 13 -

to address issues relating to a servicer's evaluation of a borrower for a loan modification program. *For this reason, and the reasons stated below with respect to loss mitigation practices, the Bureau declines to add a servicer's failure to correctly evaluate a borrower for loss mitigation option as a covered error in the final rule.*

*Id.* at 272-73 (quoting Mortgage Servicing Rules, 78 Fed. Reg. at 10743-44).

The *Sutton* court further determined that the CFPB's discussion of § 1024.41 confirmed its conclusion that the catch-all provision did not include errors relating to the denial of a loss mitigation option:

The Bureau does not believe that it can develop, at this time, rules that are sufficiently calibrated to protect the interests of all parties involved in the loss mitigation process and is concerned that an attempt to do so may have unintended negative consequences for consumers and the broader market. Loss mitigation programs have evolved significantly since the onset of the financial crisis and the Bureau is concerned that an attempt to mandate specific loss mitigation outcomes risks impeding innovation, that would allow such programs to evolve to the needs of the market. The Bureau further believes that if it were to attempt to impose substantive loss mitigation rules on the market at this time, consumers' access to affordable credit could be adversely affected.

. . .

The Bureau is implementing requirements, however, for servicers to evaluate borrowers for loss mitigation options pursuant to guidelines established by the owner or assignee of a borrower's mortgage loan. In order to effectuate this policy, the Bureau has created certain requirements in § 1024.38, with respect to general servicing policies, procedures, and requirements, and other requirements in connection with the loss mitigation procedures in § 1024.41. . . . Borrowers have a private right of action to enforce the procedural requirements in § 1024.41, as set forth in § 1024.41(a); borrowers do not, however, have a private right of action under the Bureau's rules to enforce the requirements set forth in § 1024.38 or to enforce the terms of an agreement between a servicer and an owner or assignee of a mortgage loan with respect to the evaluation of borrowers for loss mitigation options. *The Bureau believes this framework provides an appropriate mortgage servicing standard; servicers must implement the loss mitigation programs established by owners or assignees of mortgage loans and borrowers are entitled to*

> *receive certain protections regarding the process (but not the substance) of those evaluations.*

*Id.* at 273 (quoting Mortgage Servicing Rules, 78 Fed. Reg. at 10817-18 (emphasis added)).

Consistent with the reasoning of the *Sutton* court, courts have found errors relating to loss mitigation applications as falling outside the scope of § 1024.35(b)(11)'s catch-all provision. *See, e.g.*, *Smith v. Wells Fargo Bank, N.A.*, No. 18 CV 7979, 2019 WL 2189285, at *4 (N.D. Ill. May 21, 2019) (errors relating to loss mitigation applications "are not errors in the processing of scheduled periodic payments under the loan terms . . . [and thus] are not covered by § 1024.35(b)'s response requirements"); *In re Rosa*, No. 17-27826 (CMG), 2018 WL 4352168, at *7-8 (Bankr. D.N.J. Aug. 9, 2018) (catch-all provision does not include errors relating to denial of loan modification); *Bracco v. PNC Mortg.*, No. 8:16-cv-1640-T-33TBM, 2016 WL 4507925, at *4-5 (M.D. Fla. Aug. 29, 2016) (loan modification requests do not relate to "servicing" of a loan); *Farraj v. Seterus, Inc.*, No. 15-cv-11878, 2015 WL 8608906, at *3-4 (E.D. Mich. Dec. 14, 2015) (holding failure by servicer to provide requested calculations for HAMP modification did not constitute a "covered error").

Recognizing the above caselaw, Plaintiff attempts to distinguish the facts at hand by arguing that the NOE "does not challenge the correctness" of Defendant's denial of her loan modification.  (Dkt. 56 at 12-13).  Instead, Plaintiff contends that because she made three payments pursuant to the TMP, Defendant was obligated to implement a permanent modification of the Mortgage Loan.  (*See id.*).  In other words, Plaintiff argues that the NOE does not challenge Defendant's decision to deny her a loan modification, but rather

challenges Defendant's failure to implement the terms of the permanent modification. (*See id.*). Plaintiff's assertions are not supported by the record.

Plaintiff's NOE plainly challenges the correctness of Defendant's decision to deny her a loan modification, not Defendant's failure to service the loan in accordance with the terms of a permanent modification. The NOE's subject line provides: "Notice of error pursuant to 12 C.F.R. 1024.35(b)(11) *for improperly denying loan modification*." (Dkt. 1-10 at 1 (emphasis added)). Further, the NOE details Plaintiff's communications with Defendant recognizing that there were issues preventing her from being approved for a final loan modification, which ultimately resulted in what she believed was the improper denial of her loan modification. (*See id.* at 2 ("Thereafter, Ocwen . . . notified [Plaintiff] again that *the same title issues were preventing [Plaintiff] from being approved for a final loan modification*. . . . Despite [Plaintiff] notifying Ocwen that these documents were already provided to Ocwen . . . *Ocwen withdrew the [TMP] offer and denied [Plaintiff's] trial modification offer*." (emphasis added))). Having plainly admitted that Defendant withdrew the offer and denied Plaintiff's trial modification offer, Plaintiff cannot now contradictorily assert that the parties had agreed and entered into a permanent modification agreement.

Plaintiff's argument is further undermined by the November 20, 2014, TMP Letter, which expressly notes that only after complying with the provisions of the Trial Period Plan would Defendant "*then* evaluate [Plaintiff's] qualifications for a Permanent Modification." (Dkt. 54-7 at 1 (emphasis added)). Additionally, under the "What You Must Do Now" section, the TMP Letter required Plaintiff to both make the required

- 16 -

payments *and* provide outstanding required documentation to process the modification request.  (*Id.*).  Further, under the "The Modification" section, the TMP Letter provides that only "upon execution of a Modification Agreement by [Plaintiff and Defendant]" would the permanent modification "govern the terms between [Plaintiff and Defendant] for the remaining term of the loan."  (*Id.* at 8).  In light of the above, Plaintiff cannot assert that the parties entered into a permanent modification agreement simply because she made three payments pursuant to the TMP.

In her statement of additional material facts, Plaintiff states that an August 26, 2016, TMP Letter conflicts with the November 20, 2014, TMP Letter because the August 26, 2016, TMP Letter provides "**If you successfully complete the Trial Period Plan by making the required payments, you will receive a modification** with an interest rate of 3.50000%, which will be fixed for 40 years from the date the modification is effective." (Dkt. 55 at 23).  The Court disagrees.  Under its "Next Steps" section, the August 26, 2016, TMP Letter further provides that the mortgage would be permanently modified upon Plaintiff's submission of timely payments and signed copies of the modification agreement, *and* both parties having signed the modification agreement.   (*See* Dkt. 1-3 at 3). Accordingly, the August 26, 2016, TMP Letter does not raise a genuine issue of material fact as to whether the parties entered into a permanent modification agreement.

Because the record is clear that the parties never entered into a permanent modification agreement, several of the out-of-circuit cases that Plaintiff relies upon are inapposite.  (*See* Dkt. 56 at 12).  In *Nunez v. J.P. Morgan Chase Bank, N.A.*, 648 F. App'x 905 (11th Cir. 2016), the parties had entered into a permanent loan modification agreement,

but the mortgage servicer purported to cancel the agreement when it was unable to rescind the already-scheduled foreclosure sale.  *Id.* at 907-908.  In other words, the issue in *Nunez* was a purported failure to "properly implement and honor the loan-modification agreement," *id.* at 909, not a denial of a permanent modification.  *See also St. Claire v. Ditech Fin., LLC*, No. 1:17-CV-3370-AT-JFK, 2018 WL 4850127, at *1 (N.D. Ga. Sept. 21, 2018) (explaining that the plaintiff had "modified the terms of her loan to an adjustable rate loan under the Home Affordable Modification Program"); *McClain v. Citimortgage, Inc.*, No. 15 C 6944, 2016 WL 269568, at *4 (N.D. Ill. Jan. 21, 2016) (rejecting the defendant's argument that the plaintiff's letters "amounted to requests for a loan modification and thus did not concern the servicing of an existing loan" because the "well-pleaded allegations assert[ed] that [the plaintiff] had already obtained a loan modification before sending any of the" letters).

On the other hand, in *Wilson v. Bank of Am.*, *N.A.*, 48 F. Supp. 3d 787 (E.D. Pa. 2014), the court found that an allegation that plaintiff "was offered a TPP agreement under the HAMP program, pursuant to which she made payments and supplied documentation, but that the loan was never permanently modified" was sufficient to state a claim under Regulation X.  *Id.* at 805.  However, the *Wilson* court provided scant analysis for that conclusion, and was considering the matter in the context of motion to dismiss for failure to state a claim and not a motion for summary judgment.  The Court does not find *Wilson* (or *In re Coppola*, 596 B.R. 140 (Bankr. D.N.J. 2018), which relied on *Wilson*) persuasive and instead, as noted above, adopts the reasoning of the *Sutton* court.

Plaintiff next argues that even if the Court concludes that the catch-all provision does not apply because the denial of Plaintiff's loan modification application is not considered "servicing," the NOE asserts additional errors not related to loss mitigation: (1) Defendant's refusal to record the Requested Instruments; and (2) Defendant's rejection of Plaintiff's February 21, 2017, payment.  (Dkt. 56 at 14).

Plaintiff argues that the first purported error, Defendant's failure to record the Requested Instruments, falls under the catch-all provision because "Ocwen's failure to record the Requested Instruments affects the servicing of [Plaintiff's] mortgage loan because if there truly is an error, Ocwen is attempting to collect the wrong monthly payment amount and has not implemented the proper terms."  (Dkt. 56 at 14).  However, having concluded that the parties never entered into a permanent modification agreement, Plaintiff's argument that she was entitled to make payments pursuant to the permanent modification agreement's terms necessarily fails.  Further, as discussed above, the catch-all provision covers errors relating to the servicing of the loan.  12 C.F.R. § 1024.35(b)(11). The failure to record instruments does not concern servicing because it does not relate to the receipt or making of payments pursuant to the terms of Plaintiff's loan with Defendant. *See id.* § 2605(i)(3).  Instead, the failure to record instruments concerns the modification of the terms of the loan and, thus, the error is not covered by the catch-all provision.

The Court also rejects Plaintiff's argument that the second purported error, Defendant's rejection of Plaintiff's February 21, 2017, payment, is a covered error under § 1024.35(b)(1) because it constitutes a "[f]ailure to accept a payment that conforms to the servicer's written requirements for the borrower to follow in making payments."  (*See* Dkt.

56 at 14).  In the Mortgage Servicing Rules, the CFPB provided the following guidance

regarding § 1024.35(b)(1):

> The Bureau proposed § 1024.35(b)(1) to implement, in part, section 6
> (k)(1)(C) of RESPA with respect to borrower's request to correct errors
> relating to allocation of payments for a borrower's account and "other
> standard servicer's duties."
>
> A failure to accept a proper payment will necessarily have implications for
> the correct application of borrower's payments.  The Bureau further believes
> that proper acceptance of payments is a standard servicer duty.  Moreover,
> proper acceptance of payments is, by definition, servicing, and already
> subject to the qualified written request procedure set forth in section 6(e) of
> RESPA and current § 1024.21(e) of Regulation X. . . .

Mortgage Servicing Rules, 78 Fed. Reg. at 10740.  However, as discussed above, Plaintiff

conceded in her NOE that Defendant had terminated its TMP offer (Dkt. 10-1 at 2) and,

thus, Defendant was not obligated to accept the February 21, 2017, payment in the amount

of $2,818.40 pursuant to the TMP.[3]

Ultimately, these additional purported errors are merely variations of Plaintiff's

challenge to the denial of her loan modification.  Indeed, the NOE refers to Defendant's

failure to record the Requested Instruments and rejection of Plaintiff's February 2017 TMP

payment as part and parcel of the denial of her loan modification.  (*See* Dkt. 1-10 at 2

("Despite Ocwen (again) telling the Borrower they would record the original CEMA and

---

[3]     In support of her argument that Defendant's failure to accept the February 21, 2017,
payment was a covered error under § 1024.35(b)(1), Plaintiff cites *Mutti v. Rushmore Loan
Mgmt. Servs. LLC*, No. C18-884RSM, 2019 WL 1957911 (W.D. Wa. May 2, 2019).  The
error by the *Mutti* defendants, the misapplication of payments pursuant to the TMP, was
found to relate to servicing and, thus, was determined to be a covered error under the catch-
all provision under § 1024.35(b)(11).  *Id.* at *5.  *Mutti* did not involve an error to accept a
proper payment under § 1024.35(b)(1).  Further, unlike the *Mutti* defendants, Defendant
was not obligated to accept the payment at issue.  Accordingly, *Mutti* is inapposite.

mortgage documents and Ocwen already being in possession of those documents, Ocwen began rejecting the Borrower's [TMP] payments near the end of February 2017, resulting in the Borrower losing out on the [TMP].")).  Accordingly, the Court grants summary judgment in favor of Defendant as to Plaintiff's § 1024.35(e)(1) claim.

### B.    Section 1024.36(c), (d) Claims

Plaintiff also alleges that Defendant failed to timely acknowledge the RFIs in violation of 12 C.F.R. § 1024.36(c) and timely respond to RFI #1 in violation of 12 C.F.R. § 1024.36(d)(2).  (Dkt. 1 at 11-13).  Section 1024.36 sets forth the requirements for a servicer's response to a borrower's request for information.  *See* 12 C.F.R. § 1024.36. "Within five [business] days . . . of . . . receiving an information request from a borrower," a servicer must send the borrower a written acknowledgement confirming receipt of the information request.  *Id.* § 1024.36(c).

Thereafter, the servicer must conduct "a reasonable search for the requested information" and either respond with the requested information or a determination that the requested information is not available to the servicer.  *Id.* § 1024.36(d)(1)(i)-(ii).  If the information requests "the identity of, and addresses or other relevant contact information for, the owner or assignee of a mortgage loan,"  the servicer must respond "no later than 10 [business] days" after receipt of the information request.  *Id.* § 1024.36(d)(2)(i)(A). "For all other requests" the servicer must respond "no later than 30 [business] days" after receipt of the information request.  *Id.* § 1024.36(d)(2)(i)(B).

### 1.  Section 1024.36(c) Claim

Defendant argues it is entitled to summary judgment on Plaintiff's § 1024.36 claim for several reasons.[4]   First, Defendant contends that it timely sent a written acknowledgement of its receipt of the RFIs pursuant to § 1024.36(c).  (Dkt. 49 at 21).  As discussed above, § 1024.36(c) requires a servicer to send a written acknowledgment confirming receipt of the information request within five business days.  *Id.* § 1024.36(c).

Defendant received the RFIs on or about August 25, 2017.  (Dkt. 47 at ¶ 18; Dkt. 55 at ¶ 18).  The RFIs directed responses be mailed to Plaintiff's counsel at the following address: "The Dann Law Firm Co., LPA, P.O. Box 6031040, Cleveland, OH 44103."  (Dkt. 48-24 at 4; Dkt. 48-25 at 5).  Pursuant to § 1024.36(c), Defendant was required to send an acknowledgement letter by September 1, 2017 (within five business days of August 25, 2017).  Defendant asserts it sent an acknowledgement letter on August 30, 2017, and submitted as proof what appears to be a computer-generated copy of the letter.  (Dkt. 47 at ¶ 21; Dkt. 48-26 at 2).  The letter is addressed to "Kim A Naimoli, 9370 Sunset Drive A-110, C/O LAW FIRM OF DIAZ, Miami, FL 33173."  (Dkt. 48-26 at 2).

Plaintiff disputes that Defendant sent the August 30, 2017, acknowledgement letter, and also asserts that the address on the letter is neither her nor her counsel's address.  (Dkt. 55 at ¶ 21).  Because the Acknowledgement Letter was not addressed to Plaintiff's home

---

[4]    Defendant also argues that summary judgment is proper because pursuant to 12 C.F.R. § 1024.36(d), it was not required to respond to RFI #2 after it was determined that Plaintiff had requested information that was "confidential, proprietary, or privileged." (Dkt. 49 at 22).  In her response to Defendant's motion, Plaintiff asserts that she did not allege a violation of § 1024.36(d) in connection with RFI #2.  (Dkt. 56 at 19 n.3). Accordingly, the Court does not address Defendant's argument.

or her counsel's address and there is no proof (*i.e.*, certified mail return receipt) that the Acknowledgement Letter was actually mailed to Plaintiff or her counsel, there is an issue of fact as to whether Defendant timely sent an acknowledgement letter to Plaintiff's RFIs pursuant to § 1024.36(c).

### 2.    Section 1024.36(d) Claim

As to Plaintiff's § 1024.36(d) claim concerning the timing of Defendant's response to RFI #1, Defendant argues that because RFI #1 requested information beyond the scope of § 1024.36(d)(2)(i)(A), Defendant was not required to respond within ten days.  (Dkt. 49 at 20).  As discussed above, servicers must respond to a request seeking information regarding "the owner or assignee of a mortgage loan" within ten business days.  *Id.* § 1024.36(d)(2)(i)(A).   "For all other requests" the servicer must respond within 30 business days.  *Id.* § 1024.36(d)(2)(i)(B).

Here, Plaintiff only challenges the timeliness of Defendant's response to RFI #1, which Defendant received on or about August 25, 2017.  RFI #1 sought information regarding the current owner, master servicer, and current servicer.  (Dkt. 47 at ¶ 19; Dkt. 55 at ¶ 19).  Pursuant to § 1024.36(d)(2)(i)(A), Defendant was required to respond to Plaintiff's request for information regarding the current owner by September 11, 2017 (within ten business days of August 25, 2017).  Pursuant to § 1024.36(d)(2)(i)(B), Defendant was required to respond to Plaintiff's request for information regarding the master and current servicer by October 10, 2017 (within 30 business days of August 25, 2017).

Defendant responded to RFI #1 in its September 26, 2017, letter.  (Dkt. 47 at ¶ 22; Dkt. 55 at ¶ 22).  Defendant essentially argues that its response to RFI #1 was timely because Plaintiff's inclusion of information regarding the master servicer and current servicer brought RFI #1 out of the 10-day deadline under § 1024.36(d)(2)(i)(A) and instead subject to the 30-day deadline under § 1024.36(d)(2)(i)(B).  (*See* Dkt. 49 at 20).  In other words, Defendant posits that where an RFI seeks other information—in addition to information regarding the owner or assignee of the mortgage loan—the servicer's deadline to respond to the RFI is altogether extended to the 30-day deadline under § 1024.36(d)(2)(i)(B).  However, Defendant does not cite, nor could the Court locate, any authority for this broad proposition.

Section 1024.36(d)(2) prescribes time limits based on the substance of the request, not on the form of the request, *see id.* § 1024.36(d)(2)(i)(A), (B), which supports the conclusion that the 10-day deadline applied to the portion of RFI #1 seeking information concerning the owner of the mortgage loan, and the 30-day deadline applied to the portion of RFI #1 seeking information concerning the master and current servicer.  *See Philistin v. Ocwen Loan Servicing, LLC*, No. 19-CIV-80048-ROSENBERG/REINHART, 2019 WL 1474329, at *3 (S.D. Fla. Mar. 18, 2019) (where the RFI requested "call log and call notes/communication" and the identities and addresses of current owner, master servicer, current servicer, pursuant to § 1024.36(d)(2), defendant "had 10 days to provide the information about the owner of the loan . . . and 30 days to provide the other responsive materials").  Accordingly, pursuant to § 1024.36(d)(2)(i)(A), Defendant did not timely respond to the portion of RFI #1 seeking information concerning the current owner and,

thus, Defendant is not entitled to summary judgment on this basis.  However, this does not end the inquiry because, as discussed below, Plaintiff can pursue her claims under RESPA only if she can demonstrate recoverable damages.

### C.    Damages

#### 1.    Actual Damages

"As a general matter, section 2605 provides for damages 'as a result of [the loan servicer's] failure' to comply with its provisions."  *Tanasi*, 257 F. Supp. 3d at 269.  A plaintiff may seek actual damages, but must show that "the damages were proximately caused by the defendant's violation of RESPA."  *Sutton*, 228 F. Supp. 3d at 264 (citation omitted); *see also Gorbaty v. Wells Fargo Bank, N.A.*, No. 10-CV-3291 (NGG)(SMG), 2014 WL 4742509, at *5 (E.D.N.Y. Sept. 23, 2014) ("In order to recover actual damages, a plaintiff must allege injury and resulting damages that are proximately caused by the loan servicer's failure to adhere to its obligations under § 2605—*i.e.,* the timing and form of Wells Fargo's responses to Plaintiff's QWRs.").  A plaintiff's "failure to establish that she suffered actual damages from alleged RESPA violations is fatal to her claim."  *Corazzini v. Litton Loan Servicing LLP*, No. 1:09-CV-199, 2010 WL 6787231, at *12 (N.D.N.Y. June 15, 2010) (granting summary judgment on RESPA claims).

Defendant argues that Plaintiff has failed to submit evidence indicating she was damaged as a result of the alleged RESPA violations.[5]  (Dkt. 49 at 24).  The Court agrees.

---

[5]      In its reply, Defendant also argues that summary judgment is proper because Plaintiff failed to allege a claim for harm to creditworthiness pursuant to 12 U.S.C. § 2605(e)(3).  (Dkt. 58 at 7).  However, Plaintiff did not allege a § 2605(e)(3) claim in her Complaint (*see* Dkt. 1), nor does she argue such a claim in her response in opposition to

In her opposition to Defendant's motion for summary judgment, Plaintiff argues that her actual damages were incurred as a result of Defendant's denial of her loan modification, not Defendant's failure to acknowledge or timely respond to the RFIs.  (*See* Dkt. 56 at 21-22 ("Combine [the delinquency notices] with Ocwen wholly ignoring its receipt of the Requested Instruments and returning [Plaintiff's] monthly payments, it is not farfetched to believe that [Plaintiff] feared that Ocwen would file foreclosure on her home and [Plaintiff] suffered 'loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress'. . . .  [Plaintiff's] attorneys' fees are a direct result of Ocwen's failure to implement the permanent modification, record the Requested Instruments, and properly accept her monthly payment. . . .  If Ocwen had corrected the mortgage recording issue, implemented a permanent modification, and accepted [Plaintiff's] payments, [Plaintiff] would not be in the same position.")).  However, the Court has already concluded that Plaintiff cannot sustain her RESPA claim based on Defendant's denial of her request for a loan modification.  As such, because Plaintiff does not argue, nor does the record indicate, that there is a genuine issue of material fact as to whether Defendant's failure to timely acknowledge or respond to the RFIs proximately caused actual damages to Plaintiff, Plaintiff's remaining RESPA claims must fail.

---

Defendant's motion (*see* Dkt. 56).  Further, there is no evidence in the record to indicate that Plaintiff sent Defendant a qualified written request and that Defendant submitted information regarding Plaintiff's overdue payments to a credit reporting agency within sixty days of receiving the qualified written request pursuant to § 2605(e)(3).  Accordingly, the Court does not address Defendant's argument.

Although she does not expressly raise these arguments in opposition to Defendant's motion for summary judgment, in her Complaint, Plaintiff alleges the following actual damages: (1) "the reinstatement amount of the Loan is now in excess of Two Hundred Sixty Thousand Dollars ($260,000.00)"; (2) "great emotional distress driven by the fear that [Plaintiff] might lose and be forced to leave her [h]ome[,] . . . result[ing] in loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress"; (3) Plaintiff remaining delinquent on her obligations under the Loan and having been prevented from "taking reasonable actions to resume making her monthly mortgage payments on the Loan and [begin] the process of rehabilitating her credit"; (4) attorneys' fees and certified mail expenses in connection with sending the RFIs and the NOE; (5) $5,000 in attorneys' fees in connection with the "pursuit of another loan modification after Ocwen improperly rejected her TPP"; and (6) TMP payments in the amount of $2,818.40. (Dkt. 1 at ¶¶ 39-43). In an abundance of caution, the Court has considered whether any of these potential damages could be found in the instant record with respect to Defendant's purported failure to timely acknowledge the RFIs or timely respond to RFI #1.

Here, Defendant received the RFIs on or about August 25, 2017. (Dkt. 47 at ¶ 18; Dkt. 55 at ¶ 18). Pursuant to § 1024.36(c), Defendant was required to acknowledge the RFIs by September 1, 2017. As discussed above, there is a question of fact as to whether Defendant sent the August 30, 2017, acknowledgement letter. (Dkt. 47 at ¶ 21; Dkt. 55 at ¶ 21). Additionally, pursuant to § 1024.36(d)(2)(i)(A), Defendant was required to respond to the portion of RFI #1 seeking information regarding the current owner by September 11, 2017—Defendant responded 15 days later, on September 26, 2017. (Dkt. 47 at ¶ 22; Dkt.

- 27 -

55 at ¶ 22).  As discussed below, Plaintiff has failed to come forward with any evidence to demonstrate that the alleged RESPA violations—Defendant's untimely acknowledgement of the RFIs and 15-day delay in responding to RFI #1—proximately caused her actual damages.  *See Celotex Corp.*, 477 U.S. at 325.

Plaintiff primarily seeks damages that occurred before the alleged RESPA violations and, thus, such damages could not have been proximately caused by the violations.  For example, Plaintiff seeks attorneys' fees and certified mail expenses incurred in connection with sending the RFIs and the NOE.  Although "[c]osts incurred after an incomplete or insufficient response are recoverable under RESPA, . . . 'costs incurred before the violation occurred, such as the expenses of preparing an initial request for information, cannot serve as the basis for actual damages.'"  *Tanasi*, 257 F. Supp. 3d at 271 (quoting *Pimental v. Ocwen Loan Serv., LLC*, No. 16-CV-62089, 2016 WL 15159, at *5-6 (S.D. Fla. Nov. 8, 2016)); *see also Jackson v. Caliber Home Loans*, No. 18-cv-4282 (NG)(CLP), 2019 WL 3426240, at *8 n.6 (E.D.N.Y. July 30, 2019) (because a plaintiff can only recover costs proximately caused by the defendant's violation, plaintiff cannot seek costs in connection with the sending of her initial requests for information).  As such, Plaintiff cannot obtain damages for the expenses associated with the sending of the RFIs, which then precipitated the alleged RESPA violations.  Similarly, Plaintiff is not entitled to damages based on the three TMP payments in the amount of $2,818.40.  (Dkt. 47 at ¶ 11; Dkt. 55 at ¶ 11).  The payments were made between September and October 2016 pursuant to the terms of the TMP and thus predate the alleged RESPA violations.  Accordingly, Plaintiff cannot sustain her RESPA claims on the basis of these damages.

Moreover, Plaintiff has not submitted evidence to raise a genuine issue of material fact as to whether the alleged RESPA violations proximately caused her emotional distress. Instead, Plaintiff expressly argues that her emotional distress was the result of the combination of her receipt of delinquency notices, notifying her that her account had been referred to an attorney for foreclosure, in addition to Defendant ignoring its receipt of the Requested Instruments and returning Plaintiff's TMP payment.   (*See* Dkt. 56 at 22). Further, when asked regarding the extent of her emotional distress, Plaintiff answered:

> Well, I mean, you know, it's just day-to-day life, living, you know, with my husband and we're constantly – there's arguments over it and sleepless nights.  And we're worried about not being able to hang onto it because that's the place we would like to live when we retire.

(Dkt. 55-2 at 7).  Plaintiff did not testify that her emotional distress was caused or worsened by Defendant's failure to timely acknowledge her RFIs or Defendant's 15-day delay in responding to RFI #1, separate and apart from the denial of her loan modification or the potential foreclosure of her home.  Consequently, there are no genuine issues of material fact as to whether the alleged RESPA violations proximately caused Plaintiff's alleged emotional distress.  *See Ehrenfeld v. Wells Fargo, N.A.*, No. 19-cv-2314 (BMC), 2019 WL 4933631, at *5 (E.D.N.Y. Oct. 7, 2019) (plaintiff failed to allege actual damages where "she ha[d] not alleged facts showing defendant's alleged RESPA violations—rather than the underlying failure to pay her mortgage and the potential foreclosure sale—caused these emotional damages"); *Sutton*, 228 F. Supp. 3d at 275 ("Plaintiff cannot disentangle the distress that was occasioned by the loan modification into which she voluntarily entered from that which may have been occasioned by Defendant's failure to respond fully to any

of her requests for information or to modify the term of the mortgage, and for this reason has not alleged actionable emotional distress damages."); *Roth v. CitiMortgage Inc.*, No. 12-CV-2446 (SJF)(WDW), 2013 WL 5205775, at *8 (E.D.N.Y. Sept. 11, 2013) ("Even if plaintiff and her husband suffered emotional distress from the possible loss of their home, plaintiff has not alleged that this injury was proximately caused by defendant's failure to comply with RESPA, *i.e.,* the form and timing of its response to plaintiff's letters."), *aff'd on other grounds*, 756 F.3d 178 (2d Cir. 2014).

Plaintiff's remaining claims for damages (the reinstatement amount of the Mortgage Loan now being in excess of $2,600,000.00; Plaintiff remaining delinquent on her obligations under the Mortgage Loan and being unable to resume her monthly mortgage payment and rehabilitate her credit; $5,000 in attorneys' fees in connection with the pursuit of another loan) similarly fail.  Plaintiff has not submitted evidence raising a triable issue of fact as to whether the damages were a result of Defendant's failure to timely acknowledge the RFIs or Defendant's 15-day delay in responding to RFI #1, as opposed to the denial of her loan modification or the general possibility of foreclosure.  *See Diedrich v. Ocwen Loan Serv., LLC*, 839 F.3d 583, 593 (7th Cir. 2016) (affirming dismissal of RESPA claim where plaintiffs put forth no evidence that the defendant's failure to provide specific information under § 2605(e)(2), "as opposed to the lawsuit or foreclosure," caused her damages); *Heyman v. Citimortgage, Inc.*, No. 14-1680-KM-MAH, 2019 WL 2642655, at *37 (D.N.J. June 27, 2019) (granting summary judgment where plaintiff did not submit evidence factually linking damages to "an inadequate RESPA response, as opposed to the [plaintiff's] other complaints about the loan modification process"); *Soriano v.*

*Countrywide Home Loans, Inc.*, No. 09-CV-02415-LHK,  2011 WL 1362077, at *7 (N.D. Cal. April 11, 2011) ("Plaintiff cannot claim that the insufficient response to the [qualified written request ('QWR')], in and of itself, caused his loan payments to rise, directly caused his emotional distress resulting from the rising charges, or directly damaged his credit. Plaintiff has failed to introduce any evidence to show that 'some colorable relationship between his injury and the actions or omissions that allegedly violated RESPA' exists."). In sum, on the record before the Court, no reasonable trier-of-fact could find that Plaintiff suffered actual damages proximately caused by Defendant's purported violations of RESPA.

### 2.      Statutory Damages

Plaintiff also cannot show that she is entitled to statutory damages.  "To obtain statutory damages . . . a plaintiff must establish 'a pattern or practice of noncompliance with the requirements' of § 2605 by the defendant."  *Id.* (quoting 12 U.S.C. § 2605(f)(1)). "'Pattern or practice' means 'a standard or routine way of operating.'"  *Gorbaty v. Wells Fargo Bank, N.A.*, No. 10-CV-3291 (NGG)(SMG), 10-CV-3354 (NGG)(SMG), 2012 WL 1372260, at *5 (E.D.N.Y. April 18, 2012).

"Though there is no set number of violations needed to [establish] 'a pattern or practice of noncompliance,'" *Sutton*, 228 F. Supp. 3d at 265, courts have held that three violations of RESPA are insufficient to support a claim for statutory damages, *see Jackson*, 2019 WL 3426240, at *9 n.6 ("[The court is] unpersuaded that, even considering all three alleged RESPA violations in the [proposed amended complaint] sufficiently pleads a pattern or practice of noncompliance with the requirements of § 2605.").  *See also Fournier*

*v. Bank of America Corp.*, No 5:13-CV-00702, 2014 WL 421295, at *4 (N.D.N.Y. Feb. 4, 2014) ("[T]hree instances of noncompliance with RESPA is insufficient to establish a pattern or practice of noncompliance.").

As a threshold matter, having failed to raise a triable issue of fact as to actual damages, Plaintiff's claim for statutory damages necessarily fails. "RESPA provides that in addition to 'any actual damages,' borrowers may also recover 'any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.'" *Jackson*, 2019 WL 3426240, at *9 (quoting § 2605(f)(1)(A)-(B)). "Courts in this circuit have held that 'the plain language of Section 2605 indicates that an allegation of actual damages is necessary to state a claim for liability.'" *Id.* (citations omitted); *see also Dolan v. Select Portfolio Servicing*, No. 03-CV-3285 PKC AKT, 2016 WL 4099109, at *5 (E.D.N.Y. Aug. 2, 2016) ("[T]he plain language of Section 2605 indicates that an allegation of actual damages is necessary to state a claim for liability."); *Bonadio v. PHH Mortg. Corp.*, No. 12-CV-3421, 2014 WL 522784, at *5 (S.D.N.Y. Jan. 13, 2014) ("[P]roof of actual damages is mandatory to recover on a § 2605 violation, and a § 2605 claim cannot stand on statutory damages alone." (alteration and citation omitted)).

Plaintiff's claim for statutory damages also fails because Plaintiff has not submitted evidence demonstrating a pattern or practice of noncompliance. The Court has identified, at most, three potential violations: (1) Defendant's failure to timely acknowledge RFI #1, in violation of § 1024.36(c); (2) Defendant's failure to timely acknowledge RFI #2, in violation of § 1024.36(c); and (3) Defendant's failure to timely respond to RFI #1, in

violation of § 1024.36(d).[6]   Although Plaintiff correctly notes that there is no "magic number" of violations to create a pattern or practice of noncompliance, courts in this Circuit have held that three violations are insufficient to establish the requisite pattern or practice. *See Jackson*, 2019 WL 3426240, at *9 n.6; *Fournier*, 2014 WL 421295, at *4.

Because Plaintiff has failed to raise a genuine issue of material fact as to her damages, the Court grants summary judgment in favor of Defendant as to Plaintiff's RESPA claims.   *See Corazzini v. Litton Loan Servicing LLP*, No. 1:09-cv-199 (MAD/ATB)*, 2010 WL 6787231, at *12 (N.D.N.Y. June 15, 2019) ("Plaintiff's failure to establish that she suffered actual damages from the alleged RESPA violations is fatal to her claim."); *Gorham-DiMaggio v. Countrywide Home Loans, Inc.*, No. 08-CV-19, 2009 WL 1748743, at *8 (N.D.N.Y. June 19, 2009) ("[B]y alleging a breach of RESPA duties alone without alleging actual damages and the proximate cause of the breach of duty to those damages, Plaintiff fails to state a RESPA claim.").

## III.   <u>State Law Claims</u>

Having concluded Plaintiff's federal claims are not viable, the Court considers whether it should exercise supplemental jurisdiction over Plaintiff's state law claims under GBL § 349 and 3 NYCRR § 419.3, and concludes that it should not.

---

[6]      Despite Plaintiff's contention that are "a total of at least four violations" (Dkt. 56 at 23), the Court concluded that errors relating to the denial of Plaintiff's loan modification were not covered errors and, thus, summary judgment in favor of Defendant was warranted as to Plaintiff's § 1024.35(e) claim.  Consequently, the Court concludes there are genuine issues of material fact, at most, as to three violations of RESPA.

Supplemental jurisdiction "is a doctrine of flexibility, designed to allow courts to deal with cases involving pendant claims in the manner that most sensibly accommodates a range of concerns and values." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). The Court's exercise of this discretion is governed by 28 U.S.C. § 1367:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). Under § 1367(c):

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1)   the claim raises a novel or complex issue of State law,
>
> (2)   the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3)   the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4)   in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id.* § 1367(c). "[T]he discretion implicit in the word 'may' in subdivision (c) of § 1367 permits the district court to weigh and balance several factors . . . ." *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994). After dismissing all federal claims, the district court must "reassess its jurisdiction over the case by considering . . . judicial economy, convenience, fairness, and comity." *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004). "[D]ismissal of pendent state law claims under such circumstances is generally appropriate,

- 34 -

as [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Ross v. Woods*, 412 F. App'x 392, 393 (2d Cir. 2011) (quotation omitted and second alteration in original).

In this case, the Court has dismissed all the claims over which it has original jurisdiction. Upon consideration of all relevant factors, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. "[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Purgess*, 33 F.3d at 138 (quotation omitted); *see also Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (where "federal law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims"). Any discovery the parties have completed can be used in any subsequent state court proceeding. And, given this Court's significant civil and criminal dockets, the parties may be better served by a state court which can finally decide the state law claims in a timely and efficient manner.

The dismissal of Plaintiff's state law claims is without prejudice. *See JetBlue Airways Corp. v. CopyTele Inc.*, 629 F. App'x 44, 45 (2d Cir. 2015) (dismissal for lack of subject matter jurisdiction must be without prejudice). Moreover, under 28 U.S.C. § 1367(d), the statute of limitations for Plaintiff's state law claims has been tolled while the instant action was pending and shall be tolled for a period of <u>30 days after dismissal</u>.

In order to pursue her remaining state law claims, Plaintiff must file a state court action within the applicable time period.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment (Dkt. 46) is granted as to Plaintiff's federal claims, and the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, which are hereby dismissed without prejudice. The Clerk of Court is directed to close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:        April 29, 2020
              Rochester, New York